FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YOLANDA P., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY,[1] <br><br> Defendant. | No. 1:20-CV-03245-JAG <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney D. James Tree represents Yolanda P. (Plaintiff); Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

**REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## I.  JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on July 6, 2018, alleging disability since September 15, 2017. Tr. 15, 216-21, 222-28. The applications were denied initially and upon reconsideration. Tr. 148-51, 155-57, 158-60. Administrative Law Judge (ALJ) Chris Stuber held a hearing on July 16, 2020, Tr. 35-67, and issued an unfavorable decision on August 4, 2020. Tr. 12-34. Plaintiff requested review by the Appeals Council, and on October 30, 2020 the Appeals Council denied the request for review. Tr. 1-6. The ALJ's August 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 23, 2020. ECF No. 1.

## II.  STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and are only briefly summarized here. Plaintiff was born in 1978 and was 39 years old on the alleged onset date. Tr. 28. Plaintiff has an 11th grade education and attended special education classes. Tr. 251. She has past work as a housekeeper. Tr. 27, 251. She has numerous impairments including degenerative disc disease of the cervical and lumbar spine, a congenital knee deformity (bilateral genu valgum), osteoarthritis, chondromalacia of the right patella, patellofemoral dysfunction of the left knee, right wrist pain, mental health diagnoses and an intellectual disability; her physical impairments are compounded by morbid obesity. *See e.g.*, Tr. 120-21, 365, 1218, 1231-33, 1381, 1393. She was involved in a motor vehicle collision in July 2015 and reports ongoing back and neck pain and developing and persisting knee pain and weakness, particularly in her right knee, after that date. *See e.g.*, Tr. 359, 362-63, 382-85, 391, 582, 1398.

### III. STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

### IV. SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past

relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work and (2) the claimant can perform other work that exists in significant numbers in the national economy. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V. ADMINISTRATIVE FINDINGS

On August 4, 2020, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act. Tr. 12-34.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 17.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the right knee; carpal tunnel syndrome of the right upper extremity; obesity; and borderline intellectual functioning. Tr. 18.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform sedentary work, but with the following limitations:

> [Plaintiff] is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and/or walk about 2 hours in an 8 hour workday and can sit about 6 hours. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, but never kneel, crouch, or crawl. [Plaintiff] can handle, finger, and feel with the right upper extremity on a frequent basis. She can have only occasional exposure to extreme cold and extreme heat and should avoid all exposure to hazardous machinery and unprotected heights. She is able to understand, remember, and carry

out simple, routine instructions with only occasional changes in the work setting. She can have brief and superficial interactions with the public and coworkers.

Tr. 20.

At **step four**, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 27-28.

At **step five**, the ALJ found that, based on the testimony of the vocational expert and considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, addresser, and final assembler. Tr. 28.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 29.

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated Plaintiff's subjective complaints; (2) whether the ALJ conducted a proper step-three analysis; (3) whether the ALJ conducted a proper step five analysis; and (4) whether the ALJ properly evaluated the medical opinion evidence. ECF No. 15 at 2.

## VII. DISCUSSION

**A.   <u>Step Three Findings.</u>**

Plaintiff contends the ALJ erred by failing to properly consider listing 1.02 and 12.11. ECF No. 15 at 12-16. Specifically, Plaintiff argues the ALJ's finding in regard to Listing 1.02 was conclusory and lacking citation to the record. ECF No. 15 at 13.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett*, 180 F.3d at 1099. If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 404.1520(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990); *Lewis*, 236 F.3d at 512.

Here, the ALJ found Plaintiff's impairments did not meet or equal any listed impairment. Tr. 18. For listing 1.02, the ALJ concluded "[t]he [Plaintiff's] knee impairment does not meet listing 1.02 (dysfunction of a joint). The objective medical evidence does not show involvement of one major peripheral weight bearing joint resulting in the inability to ambulate effectively." Tr. 19. The ALJ devoted two sentences to the listing, consisting of a summary of the listing with no citation to the record or further explanation. This conclusory analysis is inadequate. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (concluding a boilerplate finding

that a claimant's impairment fails to meet or equal a Listing "is insufficient to support a conclusion that a claimant's impairment does not do so."). Elsewhere in the decision, the ALJ briefly discusses Plaintiff's knees but fails to discuss relevant medical evidence. Tr. 22.

Listing 1.02A,[2] concerns:

> *Major dysfunction of a joint(s) (due to any cause)*: characterized by a gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02A.

Inability to ambulate is defined in the Musculoskeletal Listings as:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> . . .

---

[2] As of April 2, 2021, Listing 1.02 was removed and replaced with Listing 1.18. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (April 2, 2021). The Court applies the Listing that was in effect at the time of the ALJ's decision.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

      The ALJ briefly discusses Plaintiff's knees in the decision, summarizing the listing above and later in the decision noting only that "she has fairly bad knees, but not to the extent that the minimal demands of sedentary work would be ruled out." Tr. 22. The ALJ cites to imaging from 2016-2018 that shows mild osteoarthritis and subluxation of the patella and concludes analysis of her knee impairments by noting mild findings in her ankle and foot from x-rays for a sprained ankle in 2020. Tr. 22.

      An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, records show chronic knee pain, with objective evidence of congenital knee issues (bilateral genu valgum, noted severe in 2019), progressing osteoarthritis and patellofemoral dysfunction, along with morbid obesity, which (as indicated in the musculoskeletal listings) exacerbates Plaintiff's musculoskeletal impairment(s) and, in this case, has prevented corrective surgery on her knees throughout the period at issue. *See e.g.*, Tr. 1232-33, 1383; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

In 2019 Plaintiff's orthopedic surgeon indicated she had a "major deformity present in both knees" and "she is developing osteoarthritis lateral compartment [and] has patellofemoral dysfunction." Tr. 1232-33. He explained "[t]he treatment here is corrective osteotomy, turning her legs to a neutral position which have never been neutral," but explained she is unable to have corrective surgery until she loses about 100 pounds. 1232-33. He determined "she will advance to an arthritic condition at an early age and become disabled more so than she is at this time without treatment." Tr. 1233.

Additionally, the additional and cumulative effects of obesity must be considered under the musculoskeletal listing because, as noted in the listing, "disturbance of this system can be a major cause of disability in individuals with obesity, the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q. Here, the ALJ concludes only that "the evidence does not establish that the [Plaintiff's] obesity impairment, alone or in combination with her other impairments, medically equals any of the listings"; the ALJ notes elsewhere in the decision that "[Plaintiff's] body mass index (BMI) puts her in the obese range thought the period of adjudication" but this impairment has been considered in limiting her to "sedentary work with postural and environmental restrictions." Tr. 19, 24. Plaintiff is morbidly obese, however, with body mass index (BMI) noted 42.98 and up to 54.87 during the period at issue. *See e.g.*, Tr. 362, 365, 370, 376, 580, 603, 806, 1046, 1050, 1052, 1231. She cannot have corrective knee surgery until she loses at least 100 pounds. The ALJ provides little to no analysis of her obesity and how this may compound her impairments or affect her weight bearing joints; he notes that she is generally in the "obese range," when in fact she has a diagnosis of morbid obesity with BMI frequently higher than 45 throughout the period at issue. *Id.* The ALJ does not discuss her high BMI, or how morbid obesity may compound or otherwise affect her musculoskeletal

impairment(s), especially her knees, including ability to effectively ambulate as required by the musculoskeletal listing in effect at the time of the decision.

Plaintiff has reported she is unable to work due to knee pain, yet the ALJ limited discussion of her knees to a brief paragraph in the decision. Tr. 22. Records show reports of chronic knee pain, which is exacerbated by a congenital knee defect and Plaintiff's morbid obesity, with evidence of knee instability, difficulty ambulating, and increased falls during the period at issue. Tr. 359, 362, 555-56, 559, 582-583, 585, 955, 1204-05, 1398. The ALJ failed to discuss evidence of multiple knee impairments, including primary osteoarthritis in the right knee, chondromalacia of right patella, congenital genu valgum of both knees, and patella femoral dysfunction of the left knee; he does not discuss relevant findings in both knees, including MRIs of her right knee in 2016 and 2018, which showed tear of the lateral meniscus; patellar chondromalacia, including absent cartilage of the lateral facet of the patella on the right (in 2018); moderate joint effusion; and osteoarthritis of the right knee, advanced for her age. Tr. 846, 992, 1232-33. Plaintiff was noted to ambulate with mild to moderate difficulty on multiple occasions, had falls, and was prescribed crutches in the ER while waiting for an appointment with her primary care provider for a knee issue the ER doctor described as "chronic" in 2018. *See, e.g.*, Tr. 359, 376, 490, 584-89, 621, 955, 966-67, 1215. In 2019 her physical therapist recommended a cane to "decrease stress to knees/spine and to help w/fall prevention." Tr. 1410-12.

The ALJ failed to properly assess her knee impairments under listing 1.02A or elsewhere in the decision and the ALJ's conclusory findings are not supported by substantial evidence. On remand the ALJ shall reconsider the step three findings with assistance of medical expert testimony.

Plaintiff contends the ALJ also erred in failing to properly consider listing 12.11. ECF No. 15 at 13-16. On remand, the ALJ shall reconsider all medical evidence and make additional step three findings as warranted.

B. <u>**Subjective Complaints.**</u>

Plaintiff alleges the ALJ improperly disregarded her subjective symptom reports. ECF No. 15 at 4-12.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Plaintiff argues the ALJ failed to provide specific, clear and convincing reason to not fully credit Plaintiff's allegations. ECF No. 15 at 4-12. Defendant argues the ALJ provided valid reasons to discount Plaintiff's allegations. ECF No. 16 at 3-12. The Court finds the ALJ failed to offer clear and convincing reasons for disregarding Plaintiff's subjective complaints.

1. <u>*Objective Findings/Longitudinal Evidence.*</u>

The ALJ determined Plaintiff's allegations were not supported by "workup findings," citing mild objective findings and generally benign physical

examinations. Tr 22-23. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Here, as discussed *supra*, Plaintiff has consistently reported she is unable to work due to pain, specifically knee pain, yet the ALJ failed to discuss most of the objective evidence relevant to Plaintiff's knee impairments, including evidence of a congenital deformity of both knees. In a limited discussion of her knees, the ALJ focuses on mild x-ray findings including x-rays of her foot and ankle from 2020, without discussing relevant findings upon physical exam throughout the record or from MRIs of her knees in 2016 and 2018. Tr. 846, 992, 1232-33, 1402.

Further, the ALJ selectively cites from exams unrelated to her alleged impairments to discredit her symptom reports, noting normal musculoskeletal findings at ER visits for an upper respiratory infection and a ruptured ovarian cyst, for example, while not discussing numerous primary care records, specialist including orthopedic and pain clinic records, or multiple visits to the ER over a period of years for knee, back, and neck pain. *See e.g.*, Tr. 352, 363, 369, 376, 586-87, 955, 1233, 1388, 1405-06, 1435. Notably, Dr. Baylor, the state agency consultant the ALJ found persuasive, determined that the "objective findings appear mostly [consistent with] reported s[ymptoms]…"; she noted Plaintiff is "morbidly obese and has documentation of cervical and lumbar spondylosis plus [degenerative disc disease] at C3-4 and L5-S1; suspected of having right carpal tunnel impingement … and has severe deformities of the knees." Tr. 119, 122.

The ALJ erred in his interpretation of the medical evidence and erred in citing portions of the record showing milder findings while the longitudinal record showed more mixed results, leading to a characterization of the medical evidence as a whole that is not supported by substantial evidence.

2. ***Accidents.***

The ALJ found Plaintiff "attributes much of her pain to a series of accidents that do not substantiate her allegations." Tr. 22. Review of the longitudinal record confirms Plaintiff's involvement in a motor vehicle accident in July 2015 and shows consistent reports of developing or increasing back and knee pain after that date. Tr. 382-52, 391-402. For example, she went to the ER repeatedly during the summer of 2016 reporting persistent back pain since an accident a year earlier; records show consistent report of increasing knee pain or issues after 2015, as well. *See e.g.*, Tr. 435, 444, 456, 469, 488. In May 2016, for example, she reported a car accident "last summer" with pain in her back and "now knee pain started about 6 months ago, has become unbearable." Tr. 640. Later in the record, whether Plaintiff misspoke or due to a scrivener's error by her provider(s), the date of the 2015 accident is frequently reported as July 2016 in many records; she also reports being struck by a car as a pedestrian on two occasions in 2019. Tr. 1304, 1420. There is no indication anywhere in the longitudinal record that any provider doubted her claims. Furthermore, as Plaintiff points out, the cause of her impairment(s) is irrelevant; her impairments are well supported by the medical evidence. ECF No. 17 at 2-3. Based on the longitudinal record, the Court finds no inconsistency in Plaintiff's report of injury and increasing or developing pain after an accident.

The ALJ's characterization of the evidence is not supported by substantial evidence.

### 3. *Activities.*

A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ pointed to Plaintiff's general ability to drive, ability "to act as a caregiver for children," and her "statements regarding work activity" as inconsistent with her allegations. Tr. 25-26. None of these activities are inconsistent with Plaintiff's allegations of chronic pain and other symptoms preventing her from working a full-time job during the period at issue. The Ninth Circuit has repeatedly found that the ability to perform these kinds of activities is not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Further, while the ALJ found her "ability to act as the caretaker for children … incompatible with her allegations," Plaintiff's children are adults (one was 17 during the period at issue), and while she may spend time with her grandchild, there is no evidence she regularly acts as a caregiver. Tr. 26, 50, 1049. Further, if such care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). While the ALJ discredits her allegation based on her reports of work activity at a fair in 2018, she testified this was a job checking IDs at a fair for ten days in 2018; and records reveal she required a note permitting her to sit as needed after she reported a fall. Tr. 301, 1135, 1205.

The ALJ's characterization of the evidence in relation to Plaintiff's activities is also not supported by substantial evidence.

### 4. *Other Reasons.*

The ALJ made other findings regarding the consistency of Plaintiff's symptom testimony with the medical evidence. However, given the errors already discussed, the Court declines to consider additional reasons here. Because this claim is being remanded for further reconsideration of the step three findings, any reevaluation must necessarily entail reassessment of Plaintiff's subjective claims in light of the record as a whole. Upon remand, the ALJ shall carefully reevaluate Plaintiff's statements with the assistance of medical expert testimony and any other evidence or testimony necessary.

## C. **Step Five Findings.**

Plaintiff contends the ALJ erred by failing to consider evidence of Plaintiff's functional literacy at step five. ECF No. 15 at 16-17. As the case is being remanded for the ALJ to properly address step three findings and Plaintiff's subjective complaints, the ALJ shall reperform the sequential evaluation process, including step five.

## D. **Opinion Evidence.**

Plaintiff argues the ALJ improperly rejected the opinion of Emma Billings, PhD. ECF No. 15 at 17-21. Having determined a remand is necessary to readdress the step three findings and Plaintiff's subjective complaints, the Court declines to reach the alternative ground for remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

On remand the ALJ is instructed to reconsider the full medical record and revise or make additional findings in regards to the medical opinion evidence as warranted in completing the five-step process.

## VIII. CONCLUSION

The ALJ's decision is not supported by substantial evidence and not free of harmful legal error. On remand, the ALJ is instructed to call a medical expert and to reevaluate the Listings, Plaintiff's subjective complaints, and all the medical evidence of record, making findings on each of the five steps of the sequential evaluation process. The ALJ shall take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 30, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE